JODI LINKER
Federal Public Defender
Northern District of California
JOYCE LEAVITT
Assistant Federal Public Defenders
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:   (510) 637-3500
Cellular telephone:   (415) 517-4879
Email:          Joyce_Leavitt@fd.org

Counsel for Defendant GLENN

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DELANTE GLENN,<br><br>Defendant. | **Case No.:** CR 21–00399 JST; CR 14-00634 JST<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>**Court:**  Courtroom 6, 2nd Floor<br>**Hearing Date:**  April 29, 2022<br>**Hearing Time:**  9:30 a.m. |
|---|---|

**I.     INTRODUCTION**

Defendant Delante Glenn will appear before this Court on April 29, 2022, in CR 21-00399 JST, to plead guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Mr. Glenn also will admit that he violated the conditions of his supervised release in CR 14-00634 JST based on the same conduct. *See* Plea Agreement at ¶2. He will be sentenced in both cases immediately following his guilty plea and admission. The parties have entered into a plea agreement in which they agree upon the final adjusted offense level of 12 in CR 21-00399 JST which results in an advisory guideline range of 21 – 27 months custody, and the government further agrees to recommend a sentence at the low end of the guideline range. *See* Plea Agreement at ¶¶7, 16; Pre-plea

Presence Report disclosed April 15, 2022 ("PSR") at ¶76. In addition, the parties agree that the Grade B violations in CR 14-00634 JST to which Mr. Glenn will be admitting, result in an advisory guideline range of 8 - 14 months custody and the government agrees that a low end sentence of 8 months is appropriate. Plea Agreement at ¶¶7, 16; Supervised Release Violation Memorandum dated April 15, 2022 ("Violation Memo"), at p. 2. Mr. Glenn asks the Court to sentence him, consistent with the government's recommendation, to a combined sentence of 29 months custody. The sentence requested fairly accounts for many of the sentencing factors which this Court must consider in accordance with 18 U.S.C. § 3553(a), some of which are discussed below.

At the heart of Mr. Glenn's continuing criminal conduct is unresolved trauma and addiction which he has been unable to address on his own. Mr. Glenn has not taken advantage of the opportunities provided by federal probation following his 2015 federal conviction in CR 14-00634 JST because he didn't think that he needed help. But without help, Mr. Glenn has quickly relapsed each time he is out of custody and his conduct then spirals out of control. Mr. Glenn recognizes that his trauma and addiction cannot be addressed without professional help. Mr. Glenn is addicted to heroin and has been unable to maintain his sobriety out of custody. He recently overdosed in front of his children. As a result, he was not welcome back as his partner, Ramona Watkins, sought to shield their children from his actions. Mr. Glenn realizes that if he does not address those issues (which keep resulting in his possession of firearms), he will ultimately find himself dead or in jail for the rest of his life. Mr. Glenn is taking affirmative steps to avoid such an ending. For this and other reasons described below, the requested combined sentence of 29 months custody is sufficient to meet the goals of sentencing. Mr. Glenn files this memorandum in support of his sentencing request. Attached in support of the sentencing memorandum is (1) letter from Ramona Watkins (Exhibit A) and (2) the Adverse Childhood Experiences (ACEs) Questionnaire completed by Mr. Glenn (Exhibit B).

## II.  STATEMENT OF FACTS

### A.  Personal Background

Delante Glenn is a 32 year old young man who grew up in Oakland raised primarily by his mother. PSR at ¶44. When he was interviewed by probation seven years ago, Mr. Glenn did not discuss childhood trauma, describing his upbringing simply as "happy" and declining to provide

information regarding drug or alcohol use. *See* Presentence Report in CR 14-00634 JST disclosed July 24, 2015 (Original PSR) at ¶¶37, 38, 46-48. His approach at that time was consistent with his outlook that the issues plaguing him could be handled on his own. Mr. Glenn's approach to the presentence interview this time has been markedly different. During his recent probation interview, Mr. Glenn openly discussed the violence and traumatic experiences to which he was exposed growing up, as well as his resulting addiction to heroin and the ways in which it has clouded his judgment. PSR at ¶¶44-48, 53-61 (describing abuse, trauma and addiction).

In 2016, Mr. Glenn reported that he participated in football, basketball. Original PSR at ¶38. In 2022, Mr. Glenn added that while he did play basketball and football as a child, he also witnessed his father dealing drugs and physically assaulting his mother.[1] *Id*. In his recent interview, Mr. Glenn talked openly about his relationship with his father, stating that he was afraid of him. *Id*. During his interview with the probation officer, Mr. Glenn had this to say about his father:

> Seeing him abuse my mom . . . I was afraid of him . . . growing up, he made me think that being a drug dealer and a criminal was a good thing . . . he never showed me how to do something legally . . . never showed me how to be a good person. . . I realized it was not good when [we] . . . were in the same cell . . . in 2014 . . . [which was] the most time I ever spent with my dad.[2]

Mr. Glenn witnessed domestic violence against his mother, including her being hit, called names, punched, slapped and pinned down. PSR at ¶44. His mother, in turn, inflicted physical violence against her son, at times beating him with a stick, throwing a remote control at his head, slapping him around and throwing shoes at him. *Id*. The mother of two of his children, Ramona Watkins who has known Mr. Glenn since they were teenagers and is aware of his history, corroborated this information to the probation officer. *Id*.

Furthermore, the Oakland neighborhood where Mr. Glenn grew up was dangerous, which

---

[1] Mr. Glenn told probation that his father was a drug dealer who put him in the middle because he was not supposed to tell his mom what his dad did. Mr. Glenn recounted one incident when his father instructed him and his cousin to stay in the car while he went inside a house. Mr. Glenn and his cousin got out of the car and were swinging on the iron gate outside when Mr. Glenn broke his leg while his father was inside selling drugs. Mr. Glenn's father later beat his mother over Mr. Glenn's leg being broken.
[2] Mr. Glenn provided this statement during his probation interview.

meant that he bore witness to drugs and drug dealing, and violence not only in the home, but also in his community as well.[3] In 2014 before his federal case, Mr. Glen was shot in the stomach while sitting in his car. PSR at ¶50. He was hospitalized for several weeks. *Id*. He still suffers flashbacks as a result of this shooting. In addition, during his probation interview, Mr. Glenn recounted a number of other traumatic experiences to the probation officer that still affect him, including seeing a dead body in his back yard, friends killed in front of him, people robbed in front of him, his uncle killed, getting shot in the stomach, and the sound of gunshots every night.[4] Until now, Mr. Glenn has not readily discussed these traumatic memories nor asked for help. He is asking for help now.

Mr. Glenn has used drugs throughout his life, smoking marijuana at 14 years old, and turning to heroin and Percocets in his late 20's which progressed to daily use by 2018. *Id*. at ¶58. Ms. Watkins confirmed that Mr. Glenn's drug use has worsened over the past few years. *Id*. at ¶47. His heroin addiction has caused him the most problems; "I constantly need to have it so I won't get sick." Mr. Glenn recognizes that his addiction directly contributes to his possession of firearms stating "I can't think clearly when I'm high." *Id*. at ¶59. In the past, Mr. Glenn has relapsed and then been too embarrassed to ask his probation officer for help. According to Ms. Watkins, Mr. Glenn has been too embarrassed to talk with her as well. Exhibit A. However, since he's been at Santa Rita over the past year, he has been able to remain sober. In addition, he recently enrolled in Options Recovery services to help stay clean and meets with a counselor every week. PSR at ¶61.

### B. Offense Conduct and Criminal History

As described in the Plea Agreement, Mr. Glenn possessed a firearm on December 7, 2020, and again on May 3, 2021. Plea Agreement at ¶2. His conduct is based in part on his clouded judgment and inability to make good decision while high, coupled with his anxiety and fear after having been shot, and suffering from post-traumatic stress disorder (PTSD) based on a number of other things as well. The charged offense is not a crime of violence and Mr. Glenn did not possess any firearms in order to commit violence. In addition, Mr. Glenn's prior convictions do not include any crimes of

---

[3] Additional information in this factual section was provided by Mr. Glenn during his probation interview and documented in undersigned counsel's notes but was not included in the PSR.
[4] This information was in undersigned's notes taken during the probation interview with USPO Khaminh Huynh on February 22, 2022.

DEFENDANT'S SENTENCING MEMORANDUM
*GLENN*, CR 21–00399 JST; CR 14-00634 JST

4

violence. PSR at ¶¶26-29. The longest sentence imposed on Mr. Glenn in the past has been 24 months custody. PSR at ¶29. The parties are recommending 29 months prison which is longer than his past sentences and constitutes incremental punishment. Mr. Glenn is motivated to address his underlying trauma and addiction which has been inextricably intertwined with his ongoing firearms possessions. Both he and Ms. Watkins have discussed the fact that he is asking for help this time. PSR at ¶46; Exhibit A. He asks the Court to sentence him consistent with the parties' plea agreement.

### C. Future Plans

Mr. Glenn's future goals include leaving California to escape the negative peer influences and relocating to Nevada or Arizona. PSR at ¶46. Mr. Glenn is also interested in becoming a truck driver. *Id*. He has been studying truck driving course materials which his family sent to him since he's been in custody to prepare him to take his Class A driver's license exam. *Id*. He also has an interest in mentoring boys. Exhibit A.

However most significant, is Mr. Glenn's determination and commitment to maintain his sobriety so that he can continue having a meaningful relationship with his children. Mr. Glenn is participating in Options Recovery while at Santa Rita. *Id*. at ¶61. He recognizes that his biggest obstacle will be "staying sober" and has asked that probation "help me with my addiction. PTSD, and give me a chance." *Id*. at ¶46. Mr. Glenn and Ms. Watkins, have two children together – his daughter Deniyah who is 7 years old, and his son, Affan, who is one year old. PSR at ¶45. Mr. Glenn's daughter asked him if he is "in jail again for having a gun" and Mr. Glenn realizes he cannot hide what he has been doing. In addition, he now has a son who he does not want to grow up with his father in custody, as he did. Ms. Watkins stated that Mr. Glenn may return home only "if he can truly get help this time with his drug addiction . . . a drug program and . . . ongoing counseling at least once a week." *Id.* at ¶47. In her letter, Ms. Watkins describes Mr. Glenn as "a wonderful father" but also states that "his drug addiction is what holds him back" and that "he is not the same person I fell in love with when he is on drugs." Exhibit A. Ms. Watkins has seen that Mr. Glenn is "motivated to get help and stay focused" and "found help" at Santa Rita and "speaks with the guy once a week." According to Ms. Watkins "that says a lot, for someone who was in denial about the situation." *Id*. Mr. Glenn's goals for the future are straightforward but difficult to achieve. But the steps he has

taken so far, and the honesty he has shown in discussing these issues, are in the right direction.

### III. DISCUSSION

The Supreme Court's decisions over the last decade have dramatically altered the district court's role at sentencing. *See United States v. Booker*, 543 U.S. 220 (2005); *Kimbrough v. United States*, 552 U.S. 85 (2007); *Gall v. United States*, 552 U.S. 38 (2007). Taken together, these cases make it clear that district court judges now have the ability – as well as the duty – under 18 U.S.C. § 3553 to exercise judgment and discretion in arriving at a sentencing determination. The Court must consider the advisory guidelines range, the nature and circumstances of the offense, the history and characteristics of the defendant, and other factors. 18 USC § 3553(a)(1), (a)(4) and (a)(6). The enactment of the First Step Act is a recognition that rehabilitative programming is more effective than prolonged incarceration in reducing recidivism.

In this case, the government and Mr. Glenn are both asking the Court to impose a combined sentence of 29 months custody, comprised of 21 months custody in CR 21-00399 JST and 8 months in CR 14-00634 JST. Plea Agreement at ¶16. The parties negotiated this disposition and agree that it is sufficient to meet the goals of sentencing as described in 18 U.S.C. § 3553, discussed below.

### A. Mr. Glenn's history and characteristics support the requested sentence

Under 18 U.S.C. § 3553(a), Mr. Glenn's history and characteristics should be considered in determining the appropriate sentence. "Evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." *California v. Brown*, 479 U.S. 538, 545 (1987)(O'Connor, concurring). Furthermore, the Ninth Circuit has determined that lack of guidance as a youth may be mitigating factors which render a defendant less culpable. *United States v. Floyd*, 945 F.2d 1096 (9th Cir. 1991); *United States v. Walter*, 256 F.3d 891 (9th Cir. 2001).

That Mr. Glenn suffered a disadvantaged background, including abuse, exposure to violence and drug dealing, is clear from the PSR. PSR at ¶¶44. As described above and in the PSR, Mr. Glenn's father was "in and out of prison" and he witnessed both drug dealing by his father and domestic violence towards his mother. *Id*. Mr. Glenn himself was also physically abused. *Id*. His

disadvantaged background is a factor which this Court should consider.

Furthermore, Mr. Glenn's diminished capacity is a separate factor which should be considered in mitigation. The courts have emphasized lenity where someone commits an offense while suffering from significantly reduced mental capacity which contributed to the commission of the crime, and voluntary drug use does not negate the applicability of this factor. *See, e.g United States v. Cantu*, 12 F.3d 1506, 1512, 1516 (9th Cir. 1993)(The goal . . . is lenity towards defendants whose ability to make reasoned decisions is impaired); *United States v. Lewinson*, 988 F.2d 1005 (9th Cir. 1993)(granting a four level departure where defendant's depression contributed to commission of the offense finding that drug use was both "a product and factor of his impaired condition."). In this case, Mr. Glenn discussed the trauma which endures as a result of his father being in prison as well as the physical and emotional abuse he endured. PSR at ¶¶55-57.

Moreover, there is a growing body of peer-reviewed studies linking Adverse Childhood Experiences (ACEs) with long-term changes in the brain:

> Unpredictable childhood trauma has long-lasting effects on the brain. Studies have shown that people with adverse childhood experiences are more likely to suffer from mental-and physical health disorders, leading people to experience a chronic state of high stress reactivity . . . Chronic, unpredictable stress is toxic when there is no reliable adult.

Cindy Lamonthe, *When Kids Have to Act Like Parents, It Affects Them for Life*, The Atlantic, October 26, 2017.[5] This was the case with Mr. Glenn, who suffered a number of ACE's and scored 9 out of 10 on the ACE questionnaire, including abuse, neglect, exposure to domestic violence and other issues. Exhibit B. These issues have also led to his addiction to heroin. Chemical dependency must be addressed like any other chronic illness, according to the National Institute on Drug Abuse:

> Treatment enables people to counteract addiction's powerful disruptive effects on the brain and behavior and to regain control of their lives.

*How Effective is drug addiction treatment? Principles of Drug Addiction Treatment: A Research Based Guide* (Third Edition), National Institute on Drug Abuse.[6] Treatment of the trauma

---

[5] Available at https://www.theatlantic.com/family/archive/2017/10/when-kids-have-to-parent-their-siblings-it-affects-them-for-life/543975/
[6] Available at https://www.drugabuse.gov/publications/principles-drug-addiction-treatment-research-

and drug addiction, in lieu of imprisonment is far more effective in reducing recidivism and Mr. Glenn wants this treatment. In the past, he has denied to himself that he had any problem with trauma or addiction. He is now actively seeking help so he can finally address it. For this reason as well, he asks the Court to sentence him to the parties agreed upon sentence of 29 months custody.

### B. The nature and circumstances of the offense

Mr. Glenn pled guilty to a violation of 18 U.S.C. § 922(g)(1) – felon in possession of a firearm and acknowledged in the plea agreement that he possessed a firearm on two occasions. Plea Agreement at ¶2. He agrees that the conduct is serious, as is the repetitive nature of his conduct. His criminal conduct is connected to his ongoing fear and anxiety based on untreated trauma, which fear and anxiety is magnified when he uses drugs. Mr. Glenn understands the urgency in utilizing the help he can receive on federal supervision. Having overdosed in front of his children and being prohibited from returning to his house as a result of his addiction and conduct also has highlighted for Mr. Glenn the need for him to address his issues.

In mitigation, the offense is not a crime of violence and Mr. Glenn did not possess any firearm with the intent to commit any crimes of violence.[7] For this reason as well, he asks the Court to sentence him to a combined sentence of 29 months custody which represents a guideline sentence.

### C. The Need for Just Punishment, Adequate Deterrence Supports the parties agreement

A combined sentence of 29 months custody will result in Mr. Glenn serving time in custody which is incrementally longer than what he has previously served (ie 24 months custody imposed in his prior federal offense in 2016 and again based upon a violation imposed in 2019). PSR at ¶29. The punishment and deterrence in this case will not be additional months in custody but rather Mr. Glenn's inability to be with his children and be a role model for them. *Id*. at ¶47 ("Before he gets

---

based-guide-third-edition/frequently-asked-questions/how-effective-drug-addiction-treatment
[7] The probation officer who prepared the Memorandum in CR 14-00634 JST falsely stated that Mr. Glenn's violation in 2019 was based upon his "involvement" in armed robberies. Memorandum at p.2 Mr. Glenn's violation occurred after he was arrested for suspicion of robberies but that case was dismissed in the state because the evidence pointed to others and the police showed witnesses Mr. Glenn's photo before asking them to identify whether he was involved. The federal violation was based upon his acknowledgement that he possessed a firearm but any statement referencing robberies was struck from the admission.

released, he needs to be appointed to a drug program and have ongoing counseling at least once a week."); Exhibit A ("when he's high I refuse to let him be home because the children don't need to see him . . .when he isn't functioning in his right state of mind.").

Although being a role model for his children was a stated goal for Mr. Glenn at the time of his sentencing in 2016, the difference between then and now is that Mr. Glenn understands that he has to work hard with assistance from professionals, in order to put his trauma and addiction (and resulting criminal conduct) behind him. What is different is that he is seeking out help and also admitting to those close to him that he needs that help. Exhibit A. While the Court could justify sentencing Mr. Glenn to a term of incarceration which is greater than 29 months custody, he asks the Court to allow him to demonstrate that he has been adequately punished and deterred, as his seeking out help and proactive steps this time around indicate. Both parties agree that a sentence of 29 months custody is appropriate in this case. Mr. Glenn asks the Court to sentence him consistent with the negotiated disposition.

### D. Obtaining Treatment in the Most Effective Manner

"The underlying purposes of sentencing include not only punishment and deterrence, but also the provision of treatment to a defendant in need of it." *United States v. Bad Marriage*, 392 F.3d 1103, 1114 (9th Cir. 2004) (citing 18 U.S.C. § 3553(a)(2)(D)). Furthermore, "Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000) (citing 18 U.S.C. § 3553(a)(2)(D)). Intensive rehabilitative programming, including group and individual counseling, drug treatment, cognitive behavioral therapy, meetings and employment training is a far more effective tool in combating than a lengthy term of imprisonment. The requested sentence of 29 months custody balances these interests.

### E. Sentencing During Covid-19 Pandemic is An Additional Ground for A Variance

A sentence that takes no account of the COVID-19 Pandemic is plainly unreasonable. Mr. Glenn has spent almost a year in custody at Santa Rita jail during the height of the pandemic and his sentence should account for the severity of prison during this time. The past, and ongoing, harsh prison conditions and lack of programming opportunities in jail because of the coronavirus is reason

enough to vary downward in imposing sentence. *See, e.g. United States v. Armstrong*, No. 18-CR-5108-BAS-1, 2020 WL 4366015, at *4 (S.D. Cal. July 30, 2020)("defendants committing similar offenses now, in the time of COVID-19, are receiving vastly lower sentencing recommendations, because their time in custody is harsher.") The reality of COVID in prisons has been one of restricted conditions, with inmates sent to single cells or solitary confinement, repeated quarantines, reduced programs and visits, abrupt cancellations, and constant uncertainty. This experience should affect the 3553(a) calculus and for this reason as well, the proposed sentence of 29 months custody is appropriate.

### IV. CONCLUSION

For the reasons described above, Mr. Glenn respectfully requests that the Court sentence him to a combined sentence of 29 months custody, which could be divided as 21 months custody in CR 21-0399 JST consecutive to 8 months custody in CR 14-0634 JST, or any other way that the Court deems appropriate.

Dated: April 22, 2022                    Respectfully submitted,

                                         JODI LINKER
                                         Federal Public Defender
                                         Northern District of California


                                                 /S
                                         JOYCE LEAVITT
                                         Assistant Federal Public Defender